## Commonwealth v. Prechtl

*David A. Whitney,* for defendant.
*Vernon Roof,* for plaintiff.

GREINER, *P.J.,* August 9, 1983—Defendant filed timely appeal from a finding of guilty by District Justice Daniel T. Brahaney, Magisterial District 59-3-02, on a charge of killing an antlered deer in closed season in violation of Section 501 of The Game Law, 34 P.S. § 1311.501, with an imposition of a $200 fine and $18 costs. At de novo hearing it developed that the appeal was based upon Section 710 of The Game Law which provides for a penalty of only $25 for killing such illegal deer "by mistake." 34 P.S. § 1311.710. Contra, the Commonwealth contends that defendant is subject to full penalty under Section 710(c) which provides:

"(c) Said portion of the penalty and the sworn statement, together with the officer's report, shall be forwarded to the director as quickly as possible for review. If after investigation the director is not satisfied said killing, or attempted killing, was done by mistake, but was caused by *negligence or carelessness,* he shall order the defendant to be prosecuted in the regular manner, and the amount so deposited shall be applied toward the payment of the full penalty and any costs of prosecution as provided in this act." (Emphasis supplied.)

It is not disputed that December 13, 1982, was closed for hunting antlered deer and open only for doe, and that on that day at approximately 12:00

noon, defendant killed an eight-point buck within or on the edge of a hundred-foot-wide electrical high-tension power line at a distance of 350 to 400 yards using a four-power scope. The area is extremely hilly and it was an uphill shot at the deer just emerging from the wooded area bordering the power line. The height of the scrub brush within the power line is somewhat in dispute, the Game Protectors' "post-mortem" investigation concluding that it was not high enough to obscure the antlers at the distance and from the position where defendant fired his shot, and defendant contending that although the day was clear the conditions under which he shot did not necessarily conform to the niceties of the controlled laboratory investigation the day following.

The Deputy Game Protector observed defendant and his father unload the antlered deer from a three-wheeler into a pickup truck, and as defendant, operating the truck traveling in the direction of the main highway which would lead to the residence and office of the Game Protector, encountered the deputy, defendant stated: "I got my buck by mistake. I have a problem, I'm looking for the game warden." The deputy radioed the Game Protector who came to the scene and advised defendant that he would accept the $25 penalty but if, after investigation, it was determined that the killing was caused by negligence or carelessness, he would order defendant to be prosecuted in the regular manner. It must be noted that defendant had complied with the provisions of Section 710 by after tracking the deer and shooting it a second time to cause instant death, he found it living and struggling in the underbrush, he immediately field dressed it and traveled some distance uphill to locate his father who was operating the three-

wheeler in order to drag the carcass from the rugged terrain to the pickup truck which was located on a nonpublic road or trail leading to the main highway just east of Ridgway Borough. The father returned to their home in Daguscahonda, Pa, by driving the three-wheeler along a firebreak trail which parallels the railroad by which means defendant and/or his father could have taken the carcass to their residence without use of the pickup truck or transversing any public highway or inhabited area excepting only in the immediate vicinity of their residence. From these circumstances we can only conclude that defendant was in full compliance with Section 710(a) and the notice to all licensees contained on page 31 of "A Digest of Pennsylvania Hunting Trapping Regulations, September 1, 1982, to August 31, 1983," issued to all licensees which reads:

### "KILLING GAME BY MISTAKE"

"Should you kill any wild bird or animal by mistake, immediately remove the entrails and deliver the carcass to any Game Protector. A reduced penalty will be charged. The penalty must be paid within 24 hours. Hunters reporting a mistake killing and paying the penalty do not suffer loss of hunting license privileges."

The above-quoted notice does *not* make any mention of "caused by negligence or carelessness." In spite of the subsequent investigation as detailed by both the Game Protector and his deputy and the director's approval of the officers' report which concluded the killing was "caused by carelessness or negligence," under the circumstances we are at a loss as to how they arrived at such a conclusion.

The Game Law does not provide any definitions of the terms "mistake," "negligence," or "careless-

ness," and we are compelled to agree with President Judge Myers of the 26th Judicial District in Com. v. Reichart, 5 D.&C. 3d 398 (1977), that Section "1311.315(6) is hardly a model of legal draftmanship," and the same applies to Section 710.

For assistance in applying the stated three terms to the facts, we look to Section 302 of the "Crimes Code" which defines culpability, including at Subsection (b)(4):

"A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation."

It also defines "knowingly" and "recklessly" but does not define "mistake" nor "carelessness." Webster's Dictionary defines "mistake," a noun, as:

"1. a An apprehending wrongly; a misconception; a misunderstanding. b A fault in opinion or judgment; an unintentional error. 2. Law. Misconception or error of the mind leading a person to do an act which he otherwise would not have done; also, the act or omission so arising, as an intentional act or omission arising from ignorance, surprise, imposition, or misplaced confidence."

It also includes in its definition of "mistake," a verb, as:

"4. To substitute erroneously in thought or perception; as, to mistake one person for another. 5. To

err in recognizing, identifying, or estimating; to misidentify. . . ."

Webster also defines "careless," the adjective, as:

"1. b Having no concern or interest; unconcerned; unmindful . . .

2. Not taking ordinary or proper care; negligent; heedless; inattentive; regardless."

"Carelessness" is set forth as the noun.

We are compelled to conclude that:

(1) Section 710 of The Game Law fails to adequately define the distinction between the terms "mistake," "negligence" or "carelessness" and the additional penalties prescribed by Subsection (c) are constitutionally unenforceable; and arguendo;

(2) The factual circumstances of the instant case do not support defendant's conviction of killing an antlered deer in closed season by mistake caused by negligence or carelessness.

We therefore make the following

## ORDER OF COURT

Now, August 9, 1983, defendant's appeal is sustained and he is found not guilty as charged, with costs on the County of Elk.